UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MABEL GONZALEZ,

     Plaintiff,

v.                              Case No: 8:23-cv-106-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff Mabel Gonzalez seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on October 20, 2020. (Tr. 350–51.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 87–105, 109–18.) The ALJ held an administrative hearing on February 9, 2022, and issued an unfavorable decision denying Plaintiff's claims on March 7, 2022. (Tr. 61–86, 119–38.) The Appeals Council granted Plaintiff's request for review, vacated the decision, and remanded the matter to the ALJ for further consideration. (Tr. 139–43.) The ALJ held a second

hearing on September 7, 2022, at which Plaintiff appeared and testified. (Tr. 42–60.) Following the hearing, the ALJ issued an unfavorable decision dated October 11, 2022, finding Plaintiff not disabled and denying Plaintiff's claims for benefits. (Tr. 18–41.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–7.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1970, claimed disability beginning on March 17, 2020. (Tr. 87, 110.) Plaintiff has completed four or more years of college and has past relevant work experience as a medical social worker and medical assistant. (Tr. 55, 384.) Plaintiff alleged disability due to major depression, anxiety disorder, lack of energy, insomnia, an inability to think clearly, suicidal thoughts, and severe headaches. (Tr. 88, 110, 383.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since March 17, 2020, the alleged onset date. (Tr. 24.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: migraine, fibromyalgia, carpal tunnel syndrome, depression, anxiety, and panic disorder. (Tr. 24.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24–26.)  The ALJ

then concluded that Plaintiff retained a residual functional capacity (RFC) to perform

light work as defined in 20 C.F.R. § 404.1567(b) except that she is:

> limited to lifting/carrying 20 pounds occasionally and 10 pounds
> frequently, standing/walking 6 hours in an 8-hour workday, and sitting
> 6 hours in an 8-hour workday.  She is limited to frequent handling,
> fingering, and feeling.  The claimant must avoid loud noise, vibration,
> hazardous machinery, and heights.  She can understand, remember, and
> carry out routine and repetitive instructions and tasks; and can manage
> or deal with occasional change[s] in routine work settings.  The claimant
> cannot perform work requiring a specific production rate or pace, such
> as assembly lines.  She can have occasional interaction with the public,
> coworkers, and supervisors.   She can maintain attention and
> concentration for two hours at a time, but does require the standard
> morning, lunch, and afternoon breaks.

(Tr. 26.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective

complaints and determined that, although the evidence established the presence of

underlying impairments that reasonably could be expected to produce the symptoms

alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the medical evidence and other evidence

in the record.  (Tr. 27.)

Considering Plaintiff's noted impairments and the assessment of a vocational

expert (VE), however, the ALJ determined that Plaintiff could not perform her past

relevant work.  (Tr. 31.)  Given Plaintiff's background and RFC, the VE testified that

Plaintiff could perform other jobs existing in significant numbers in the national

economy, such as mail clerk, office clerk, and routing clerk.  (Tr. 32, 57.)  Accordingly,

based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 33.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform

his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d

at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to include limitations with respect to exposure to a crowded work environment or enclosed spaces in Plaintiff's RFC; (2) the ALJ failed to comply with Social Security Ruling (SSR) 004P in resolving apparent conflicts with the VE's testimony; and (3) the Appeals Council erred in failing to consider additional evidence submitted by Plaintiff. For the reasons that follow, none of these contentions warrant reversal.

### A. RFC Limitations

Plaintiff argues that the ALJ erred in formulating her RFC by failing to include additional limitations resulting from her agoraphobia.  (Dkt. 20 at 3–5.)  Specifically, Plaintiff argues that in light of her agoraphobia, the RFC assessed by the ALJ "should have included the need to avoid a crowded work environment" or limitations related to enclosed workspaces.  (*Id.*)  Defendant responds that the ALJ properly formulated Plaintiff's RFC based on a consideration of the record evidence and that Plaintiff has failed to cite any evidence that her agoraphobia caused the requested limitations.  (Dkt. 25 at 7–11.)  Upon consideration, the court agrees with Defendant.

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  The RFC is the most work the claimant can do despite any limitations caused by her impairments.  20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  To determine an individual's RFC, an ALJ assesses all the relevant medical and other evidence in the case and considers a claimant's ability to meet the "physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4).  A claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012).

Additionally, in determining whether a claimant is disabled, the ALJ must consider the claimant's subjective symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To evaluate whether a claimant has established disability through the claimant's testimony of subjective symptoms, the ALJ must apply the following test: first, the ALJ must determine whether there is evidence of an underlying medical condition, and second, whether there is objective medical evidence substantiating the severity of the symptoms from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the

symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that a claimant's medical condition could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine their effect on the claimant's capacity to work. *Klawinsky v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010); 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all available evidence, including objective medical evidence, medical opinions, information about the claimant's prior work, the claimant's statements about her symptoms, the claimant's daily activities, the frequency and intensity of the claimant's pain or other symptoms, the medications the claimant takes to alleviate pain or other symptoms, and the type of treatment the claimant receives. 20 C.F.R. § 404.1529(c); *see Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 657 (11th Cir. 2020). The ALJ also considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

If the ALJ decides to discount the claimant's subjective testimony about the intensity, persistence, and limiting effects of her symptoms, the ALJ must articulate explicit and adequate reasons for doing so. *Holt*, 921 F.2d at 1223; *see Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The ALJ's decision "does not need to cite 'particular phrases or formulations; but it cannot merely

be a broad rejection which is 'not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). On appeal, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's symptom] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011); *Dyer*, 395 F.3d at 1212 (reversing district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's subjective testimony). If the ALJ's "clearly articulated credibility finding" is supported by substantial evidence in the record, the ALJ's finding shall not be disturbed. *Foote*, 67 F.3d at 1562.

Plaintiff challenges the ALJ's RFC assessment that she is limited to having "occasional interaction with the public, coworkers, and supervisors" (Tr. 26), and argues that, due to her agoraphobia, the ALJ should have also included a limitation with respect to a crowded work environment or enclosed workspaces. (Dkt. 20 at 4–5.) In the decision, the ALJ recognized that Plaintiff had diagnoses of panic disorder with agoraphobia, but found that the evidence of record did not support greater interactive limitations than those assessed in the RFC because Plaintiff "routinely exhibit[ed] good indices of social function with treating sources, including good eye contact, cooperative behaviors and normal speech, during the period at issue." (Tr.

29 (citing (Tr. 592, 598, 604, 607, 613, 616, 626, 629).)  Plaintiff has not cited any authority that her diagnosis of agoraphobia requires that the ALJ include the additional limitations she requests, nor has she cited any authority or record evidence to support her arguments in this section of her brief.  *See* (Dkt. 20 at 3–5.)  Upon consideration of the ALJ's decision, the court finds that the ALJ properly considered Plaintiff's subjective complaints, formulated her RFC in accordance with the applicable regulations and adequately considered the evidence of record and Plaintiff's medical condition as a whole.

Initially, in formulating Plaintiff's RFC, the ALJ discussed Plaintiff's subjective complaints, including her issues with anxiety, and noted that Plaintiff's "reports and testimony suggest she cannot perform even the basic physical or mental tasks associated with sedentary unskilled work, and they further indicate she would suffer an intolerable degree of absenteeism in any work setting."  (Tr. 27.)  The ALJ continued that "after careful consideration of the evidence, [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 27.)  This language demonstrates that the ALJ correctly applied the Eleventh Circuit's standard for evaluating Plaintiff's subjective complaints.  *See, e.g.*, *Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013); *Owens v. Comm'r of Soc. Sec.*, No. 3:19-cv-

1373-J-MAP, 2021 WL 651368, at *4 (M.D. Fla. Feb. 19, 2021) (finding that such language "directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence").

Moreover, substantial evidence supports the ALJ's finding that Plaintiff's complaints of totally disabling symptoms, including from her panic disorder with agoraphobia, were not entirely consistent with the evidence of record. In determining Plaintiff's RFC, the ALJ included a detailed discussion of the record evidence and repeatedly addressed Plaintiff's symptoms from her agoraphobia. (Tr. 26–31.) For example, the ALJ found that "clinical findings from the period in question show relatively good function despite this disease's progression and additional problems with sleep disruption." (Tr. 27.) In particular, the ALJ found that Plaintiff "regularly manifested cooperative behaviors with good eye contact and normal speech, logical thought processes, intact judgment, alert and awake consciousness, and intact memory, and intact attention with her providers, even when suffering from a depressed or anxious mood and affect." (Tr. 27); *see* (Tr. 592, 598, 601, 604, 607, 610, 613, 616, 623, 626, 629, 838, 842.) The ALJ also considered that in 2022, Plaintiff was prescribed Lexapro, and reported improvements to some of her symptoms, such as that she was "crying less and does feel that she is not as depressed." (Tr. 28); *see* (Tr. 804–05, 806–07, 808, 837–38, 841–42.) In reviewing the record, the ALJ also found that "[p]rimary care findings generally show a normal, alert, and oriented patient." (Tr. 28) (citing Tr. 544, 548, 553, 557, 561, 583, 638)); *see also* (Tr. 655 658, 661, 664,

666.)  The ALJ further considered Plaintiff's activities of daily living in finding that she "can still perform unskilled work" because she reported "she can still concentrate on knitting and operate a computer interface for shopping."  (Tr. 29 (citing Tr. 412–13)); *see* 20 C.F.R. § 404.1529(c).  The ALJ also considered that Plaintiff's diagnoses of panic disorder with agoraphobia were "longstanding" and that her "earnings records and work history reports show [Plaintiff] was able to perform skilled work despite these conditions."  (Tr. 27.)

Plaintiff also does not challenge the ALJ's consideration of the medical opinion evidence, in which the ALJ found opinions from Plaintiff's medical provider Maritza Fernandez that Plaintiff had "disabling limitations that include an inability to maintain 'any interactions' with others" to be not persuasive.  (Tr. 30 (citing (Tr. 621).)  Among other things, the ALJ found these opinions to be inconsistent with the other record evidence, including that Plaintiff "has not been hospitalized as an in-patient due to decompensatory responses to stress or public interactions" and there is "ample evidence of more robust function in clinical interviews and [Plaintiff's] own reports."  (Tr. 30.)  The ALJ further found generally persuasive the prior administrative medical findings on mental function, including "moderate limitations due to recurring evidence of preoccupation in hearing level records."  (Tr. 30 (citing (Tr. 695–729 (psychotherapy progress notes)).)  The ALJ also reiterated that Plaintiff "often displayed good attention and logical thought processes, as well as cooperative

behaviors, even when manifesting anxious or depressive symptoms." (Tr. 30 (citing generally Tr. 585–617, 622–34)); *see* 20 C.F.R. §§ 404.1520c, 404.1529.

The ALJ thus provided a clearly articulated credibility finding that Plaintiff's subjective complaints of total disability were inconsistent with the record evidence, and that finding was supported by substantial evidence as explained in the decision. *See Lustgarten v. Comm'r of Soc. Sec.*, 794 F. App'x 843, 848 (11th Cir. 2019) ("Generally, 'credibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence.'") (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)). That Plaintiff suffers from agoraphobia "does not reveal the extent to which [it] limit[s] her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")). Plaintiff has failed to establish that her agoraphobia causes limitations in excess of those assessed in her RFC and remand is not warranted on this basis.

### B. Social Security Ruling 00-4P and the VE's Testimony

Plaintiff argues that the ALJ erred by failing to address apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT) as required by SSR 00-4P. (Dkt. 20 at 5–8.) Plaintiff challenges the ALJ's findings with respect to each of the three jobs proffered by the VE and argues that the ALJ's finding

that Plaintiff could perform jobs existing in significant numbers in the national economy is not supported by substantial evidence. (*Id.*)  Defendant responds that the ALJ's step-five finding is supported by substantial evidence and any error by the ALJ was otherwise harmless. (Dkt. 25 at 11–19.)  The court agrees with Defendant.

When the ALJ determines that a claimant cannot perform or does not have past relevant work, the Commissioner must produce evidence that the claimant is able to perform other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c) ("[W]e are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.").   "[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.*; *see Wilson*, 284 F.3d at 1227 (To find a claimant not disabled, the ALJ must "introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform.").  The burden then shifts to the claimant to show that she "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278, n.2 (11th Cir. 2001).  "Whether there are a significant number of jobs a claimant is able to perform with his limitations is a

question of fact to be determined by a judicial officer [i.e., the ALJ]." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)).

In *Washington v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that, pursuant to SSR 00-4p and the overall regulatory scheme governing disability claims, ALJs have "an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them." 906 F.3d 1353, 1356 (11th Cir. 2018). An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. If a conflict is "reasonably ascertainable or evident," the ALJ must identify the conflict, ask the VE about it, and resolve it in his or her decision. *Id.* at 1366; *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021). Failure to resolve an apparent conflict requires remand if the ALJ's error was not otherwise harmless. *Washington*, 906 F.3d at 1366; *Viverette*, 13 F.4th at 1317 ("The ALJ's failure to address the apparent conflict, however, is not the end of the matter.").

In the decision, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. 31.) Based on the testimony of the VE, the ALJ then concluded that there are significant jobs in the national economy that Plaintiff could perform and accordingly found Plaintiff not disabled. (Tr. 32.) During the hearing, the ALJ posed a hypothetical to the VE of an individual with Plaintiff's RFC restrictions. (Tr. 56–57.) In response to the hypothetical, the VE identified three jobs

that such an individual could perform in the national economy: "Mail clerk, 209.687-026, light SVP 2, unskilled, 140,000 in the national economy[;] office clerk, 239.567-010, light, SVP 2, unskilled, 160,000 in the national economy[; and] routing clerk, 222.587-038, light SVP 2, unskilled, 60,000 in the national economy." (Tr. 57.)  In considering the VE's testimony in the decision, the ALJ explained that he had "relied upon the testimony of the vocational expert in determining that each of these jobs, individually, exists in significant numbers in the national economy.  Therefore, the jobs identified by the vocational expert, considered both singly and in combination, exist in significant numbers in the national economy." (Tr. 33.)  The ALJ continued that the VE "stated that any departure from the DOT is based on his experience and other research.  Otherwise, pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT." (Tr. 33); *see also* (Tr. 58.)

### i.   Mail Clerk

Plaintiff first argues that the ALJ erred in failing to resolve an apparent conflict with respect to the job of mail clerk.  (Dkt. 20 at 6–7.)  Pursuant to the DOT, the job of mail clerk has a reasoning level of 3, which is defined as the ability to "[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations."  *Viverette*, 13 F. 4th at 1315 (quoting DOT, App. C, § III, 1991 WL 688702); *see also* Mail Clerk, DOT 209.687-026, 1991 WL 671813.  Plaintiff relies on

the Eleventh Circuit's decision in *Viverette* to argue that the VE's testimony that Plaintiff could perform the job of mail clerk conflicted with the DOT's description of that position. (Dkt. 20 at 6–7.) In *Viverette*, the Eleventh Circuit held "that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning" and if the ALJ "relies on a job with level 3 reasoning in the step five analysis for a claimant with such a limitation . . . the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Viverette*, 13 F.4th at 1317 (citing *Washington*, 906 F.3d at 1366). Plaintiff contends that because the ALJ limited Plaintiff to "understand[ing], remember[ing], and carry[ing] out routine and repetitive instructions and tasks" (Tr. 26), the VE's testimony conflicted with the DOT and the ALJ was required to address and resolve the conflict. (Dkt. 20 at 6–7.)

Upon consideration, the court does not agree that *Viverette* requires a finding that there was an apparent conflict in the VE's testimony. As noted by Defendant, *Viverette* involved a claimant that was limited to "simple, routine, and repetitive tasks." *Viverette*, 13 F.4th at 1315. The Eleventh Circuit has explained "that level 3 reasoning is different than level 1 and level 2 reasoning because it 'lifts the restrictions on how complex the instructions can be—allowing for any 'instructions.''" *Id.* (citing *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021)). Here, Plaintiff does not have a restriction to "simple" instructions, but rather is limited to understanding, remembering, and carrying out "routine and repetitive instructions and

- 17 -

tasks" and "manag[ing] or deal[ing] with occasional change[s] in routine work settings." (Tr. 26.)  Thus, because Plaintiff was not limited to "simple" tasks and instructions, it is not clear that *Viverette* mandates a finding that there was an apparent conflict between the VE's testimony and the DOT.

Nevertheless, even if the ALJ erred in not addressing an apparent conflict with respect to mail room clerk, the court finds that such an error would be harmless. *See Viverette*, 13 F.4th at 1317 ("The ALJ's failure to address the apparent conflict, however, is not the end of the matter.").  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 1317–18 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).  In *Viverette*, the Eleventh Circuit held that after eliminating one of the VE's proffered jobs due to an unaddressed apparent conflict, remand was necessary for the ALJ to determine whether the remaining jobs existed in significant numbers in the national economy. *Id.* at 1318–19.  The court found that the ALJ had not made any findings with respect to how many jobs were available for each of the proffered jobs individually, but rather "treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the 'significant numbers' determination[.]" *Id.* at 1318. The court also noted that "over eighty percent of the jobs presented to the ALJ [were] affected by the apparent conflict" and thus found that remand was necessary for the ALJ to make the factual determination regarding the number of available jobs from the remaining positions in the first instance. *Id.*

Here, unlike in *Viverette*, the ALJ specifically found that each of the proffered jobs, "individually, exists in significant numbers in the national economy," and expressly considered the number of available jobs for the proffered positions "both singly and in combination." (Tr. 33.) As explained below, the court finds Plaintiff's challenges with respect to the remaining jobs of office clerk and routing clerk are meritless. Moreover, the VE testified that there were 160,000 office clerk positions and 60,000 routing clerk positions available in the economy, thus leaving over 60% of the identified positions unaffected by the unresolved apparent conflict with the mail room position. *Cf. Viverette*, 13 F.4th at 1318. Therefore, even assuming an unresolved apparent conflict eliminating the position of mail clerk, the ALJ made the specific factual finding that the number of office clerk and routing clerk jobs, considered singly and in combination, existed in significant numbers in the national economy and any error in failing to address an apparent conflict with the mail clerk position was harmless. *See, e.g.*, *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) ("Thus, any error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience."); *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) ("So, even if the ALJ erred in concluding that Wooten could perform the jobs of 'surveillance systems monitor' and 'document preparer,' that error would be harmless here."); *Sesler v. Comm'r of Soc. Sec.*, No. 8:20-cv-2835-DNF, 2021 WL 5881678, at *4 (M.D. Fla. Dec. 13, 2021)

("Thus, any error in the ALJ's conclusion that Plaintiff was capable of performing the job of mail clerk is harmless because the ALJ identified other jobs – packer and sorter – that Plaintiff is qualified to do considering her age, education, work experience and RFC."); *contra Connell v. Comm'r of Soc. Sec.*, No. 6:22-cv-739-DNF, 2023 WL 3774581, at *4 (M.D. Fla. June 2, 2023) (remanding where ALJ did not expressly find that other jobs "taken singly or in combination, existed in significant numbers in the national economy") (citing *Viverette*, 13 F.4th at 1318).

### ii.   Office Clerk[1]

Plaintiff also challenges the ALJ's reliance on the job of office clerk and argues that the DOT listing for office clerk conflicts with Plaintiff's RFC limitation that she can "manage or deal with occasional change[s] in routine work settings." (Dkt. 20 at 7.) In support, Plaintiff argues that this limitation "would suggest that the tasks of the job would be fairly consistent[; h]owever, the job of an office clerk consists of a variety of tasks, as set forth in the [DOT] description." (*Id.*) Upon consideration, the court finds no apparent conflict between the DOT and the VE's testimony.

An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation,

---

[1] The court notes that section 239.567-010 of the DOT refers to the position as "office helper." *See* Office Helper, DOT 239.567-010, 1991 WL 672232. However the court will refer to the position as "office clerk," as is consistent with the VE's testimony, the ALJ's decision, and the briefs of both parties.

that turns out not to be the case." *Id.* However, "*Washington* does not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (citing *Washington*, 906 F.3d at 1358).

Plaintiff does not cite any authority to support her argument in this section, nor does she identify the "variety of tasks" in the job description to which she refers. (Dkt. 20 at 7.) Instead, Plaintiff asks the court to infer that the "variety of tasks" listed in the DOT job description means that Plaintiff would necessarily need to deal with frequent changes in routine work settings in an office clerk position. However, the DOT description specifically lists the tasks of an "office clerk" permissively, and states that the position "[p]erforms any combination of the following duties in business office of commercial or industrial establishment . . . ." Office Helper, DOT 239.567-010, 1991 WL 672232; *see Christmas*, 791 F. App'x at 857 (finding that, though the VE acknowledged the claimant's limitation, she could not communicate frequently with others, there was no apparent conflict with the DOT because the DOT description did not contain specific communication requirements). Moreover, the DOT provides that an "office clerk" position has a reasoning level of 2, which requires that Plaintiff only be able to "[d]eal with problems involving a few concrete variables in or from standardized situations." Office Helper, DOT 239.567-010, 1991 WL 672232. Thus, to the extent the office clerk position provides any guidance on changes in the

workplace, there is no apparent conflict between Plaintiff's limitation to managing or dealing with "occasional changes in routine work settings" and the VE's testimony that she is able to perform the job of office clerk. *See, e.g.*, *Alicea v. Kijakazi*, No. 8:22-cv-567-VMC-MRM, 2023 WL 1110374, at *14 (M.D. Fla. Jan. 9, 2023) (finding no apparent conflict with respect to office helper position "regarding an ability to perform a variety of duties (even changing duties often without losing efficiency or composure) and being limited to simple changes"), *report and recommendation adopted sub nom. Camacho Alicea v. Kijakazi*, 2023 WL 1102648 (M.D. Fla. Jan. 30, 2023); *Sanchez v. Comm'r of Soc. Sec.*, No. 8:20-cv-2955-DNF, 2021 WL 5861229, at *5 (M.D. Fla. Dec. 10, 2021) (rejecting challenge to VE's testimony where plaintiff "simply speculates" that someone with her limitations would not be able to perform jobs).

### iii.  Routing Clerk

Plaintiff has also failed to demonstrate any error in the VE's testimony or the ALJ's decision with respect to the position of routing clerk.  Plaintiff relies on *Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591 (C.D. Cal. Aug. 6, 2019) to argue that the job of router clerk is "clearly obsolete."  (Dkt. 20 at 8.)  In *Kelly P.*, the district court held that "it is readily conceivable that technological advances in computers and cellular phones have led to the reduction, at least to a modest extent, in the number of router jobs that used to be performed with 'standard charts'" and that "[e]ven a modest reduction of the 28,000 jobs the VE identified — such a reduction of 15 percent of that number because of technological advances — would mean that the number of

available jobs is no longer significant." *Kelly P*, 2019 WL 3573591, at *6 (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014)).

Upon consideration, the court finds that Plaintiff has failed to show error in the ALJ's decision with respect to the position of routing clerk. Initially, beyond counsel's bare assertions, Plaintiff has provided no documentation or evidence to support her argument that technological advances have rendered the DOT's description of routing clerk obsolete. *See* (Dkt. 20 at 8); *see also Brown v. Comm'r of Soc. Sec.*, No. 2:20-cv-446-JES-MRM, 2021 WL 3476405, at *6 (M.D. Fla. June 29, 2021), *report and recommendation adopted,* 2021 WL 3163972 (M.D. Fla. July 27, 2021). Indeed, even the *Kelly P.* court recognized that "what is commonly known about the national job market is inadequate to find that the occupation of router, as it is described in the DOT, is completely obsolete." 2019 WL 3573591, at *6. Instead, as found by two other courts in this district, the *Kelly P.* court relied on binding Ninth Circuit precedent that whether 25,000 jobs constituted a significant number of jobs in the national economy was a "close call" and that even a modest reduction in the 28,000 jobs identified by the VE would result in the available routing clerk jobs not being significant. *See Brown*, 2021 WL 3476405, at *6; *Hemmings v. Kijakazi*, No. 8:23-cv-977-SPF, 2023 WL 6173448, at *7 (M.D. Fla. Sept. 22, 2023). "The Eleventh Circuit, on the other hand, has 'never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations.'" *Hemmings*, 2023 WL 6173448, at *7 (citing *Atha v. Comm'r,*

- 23 -

*Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) and *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005)).   Rather, "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Viverette*, 13 F.4th at 1318.   The ALJ has done so in the decision, and Plaintiff has failed to demonstrate any error in the ALJ's reliance on the VE's testimony that there exist a significant number of jobs in the national economy that Plaintiff could perform despite her RFC limitations, including with respect to the position of routing clerk.

### C. Additional Evidence Submitted to the Appeals Council

Plaintiff finally argues that the Appeals Council erred in failing to consider additional evidence that Plaintiff submitted after the ALJ's decision.   (Dkt. 20 at 8–10.)   Following the ALJ's October 14, 2022 decision, Plaintiff submitted four pages of additional records from Gulf Coast Rheumatology after a consultation that Plaintiff underwent on November 2, 2022.   (Tr. 9–12.)   Notwithstanding Plaintiff's additional evidence, the Appeals Council denied review and found that the additional evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision.   (Tr. 1–3.)   Upon consideration, Plaintiff's contention does not warrant reversal.

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). Under the relevant regulations, the Appeals Council will review a case if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see Ingram*, 496 F.3d at 1261 (stating that the "Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record'"). "[E]vidence is 'chronologically relevant' if it relates to the period on or before the date of the ALJ's hearing decision." *Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) (citing 20 C.F.R. § 416.1470(a)(5)). "Evidence is material if there is a reasonable probability that the evidence would change the administrative result[.]" *Bailey v. Soc. Sec. Admin., Comm'r*, No. 22-11531, 2023 WL 4553880, at *1 (11th Cir. July 17, 2023) (citing *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018)). "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to [] *de novo* review." *Washington*, 806 F.3d at 1321. If the Appeals Council does not consider new, material, and chronologically relevant evidence, "it commits legal error and remand is appropriate." *Id.* However, "[t]he Appeals Council is not required to provide a detailed rationale for denying review." *Mitchell v. Soc. Sec. Admin, Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014).

The Appeals Council did not err in denying review here because the records submitted by Plaintiff do not establish a reasonable probability of changing the ALJ's decision.  Plaintiff asserts that the additional records "indicated that fibromyalgia was recently diagnosed," and that because of the "significant limitations contained in the residual functional capacity" any additional limitations may have resulted in a finding that Plaintiff is disabled.  (Dkt. 20 at 8–10.)  However, Plaintiff's brief does not explain how the treatment notes would result in any additional RFC limitations and merely speculates, without reference to any portion of the record, as to what those limitations might be.  (*Id.*); *see Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *4 (11th Cir. Apr. 5, 2022) ("Walker fails to provide any discrete challenge to the AC's evaluation of his new evidence, instead only highlighting new evidence without explaining how it was material or chronologically relevant.").  Indeed, Plaintiff does not address that the ALJ expressly found that Plaintiff had a severe impairment of fibromyalgia that "significantly limit[ed] [Plaintiff's] ability to perform basic work activities" and considered that impairment in rendering the decision.  *See* (Tr. 24, 28.)

Moreover, the November 2, 2022 consultation notes appear to be a continuation of Plaintiff's treatment at Gulf Coast Rheumatology, which occurred in May and August 2022, and largely cumulative of records that the ALJ considered in rendering the decision.  *See* (Tr. 771–73, 846–47, 854–61.)  For example, at each appointment with Gulf Coast Rheumatology, Plaintiff reported "significant" or "profound" fatigue,

as well as pain in her occiput, neck, and shoulders.  (Tr. 9, 771, 854, 858.)  Indeed, both the August 2022 and November 2022 notes indicated that Plaintiff has "frequent episodes of widespread myalgias and arthralgias, worse in her trapezius and neck area."  (Tr. 9, 854.)  At the May 2022 appointment, Plaintiff reported "pains all over that have been present and worsening over the last 4 to 5 months," difficulty moving, "tenderpoints of soft tissues along her back, shoulders, elbows and medial aspects of knees" and that her "migraine disorder, severe depression, and agoraphobia" rendered her "no longer able to work."  (Tr. 858.)  The November 2022 notes similarly indicated that Plaintiff experienced pain from her fibromyalgia and that "[h]er symptoms from fibromyalgia are severe and debilitating, affecting her ability to work;" however they did not specify how her fibromyalgia affected her ability to work.  (Tr. 9, 11.)  Moreover, the May, August, and November 2022 notes all indicate that Plaintiff's use of gabapentin was largely ineffective at controlling her symptoms from fibromyalgia and reflect attempts to remedy her symptoms by adjusting her medications.  *See* (Tr. 9, 847, 860.)  At both the May and November 2022 appointments, Plaintiff's treating doctor further prescribed lifestyle modifications, including diet and exercises to address her symptoms.  (Tr. 11, 857.)  Further, as noted by Defendant, although the November 2022 notes indicate reduced range of motion in Plaintiff's cervical spine, the ALJ specifically considered the evidence of record and noted that "there is little evidence of persistent range of motion abnormalities in motor examinations."  (Tr. 29 (citing Tr. 631, 666, 736, 743, 750–51.)  Thus, the additional evidence submitted by

Plaintiff appears to be largely cumulative of other evidence in the record that was extensively considered by the ALJ in rendering the decision, and the court therefore finds that the Appeals Council did not err in finding that the additional evidence does not show a reasonable probability that it would change the outcome of the ALJ's decision. *See, e.g.*, *Reynolds v. Soc. Sec. Admin., Comm'r*, No. 21-11633, 2022 WL 853660, at *3 (11th Cir. Mar. 23, 2022) (affirming Appeals Council decision where plaintiff "failed to show that her new evidence was new, material, and chronologically relevant, and that it created a reasonable probability that, had it been considered, it would have changed the outcome of the ALJ's decision"); *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315 (11th Cir. 2021) ("The Appeals Council committed no error in declining to consider [plaintiff's] additional evidence" that "contained no new material information" and "[i]nstead, [] contained the same clinical findings evidenced in records already submitted to the ALJ.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

- 28 -

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on February 8, 2024.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record